**In re The Matter of the ESTATE OF R.B. POTASHNICK.**

**Nos. 60826, 60827.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 6, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Nov. 19, 1992.

Application to Transfer Denied
Dec. 18, 1992.

Richard A. Wunderlich, Billy R. Randles, Clayton, James E. Reeves, Caruthersville, for appellant.

Richard G. Steele, Christopher M. Crank, Cape Girardeau, for respondent.

CRIST, Judge.

The granddaughter and daughter of protectee appeal denial of their motions to set aside and granddaughter's motion to intervene in conservatorship proceedings initiated by protectee. We affirm.

R.B. Potashnick is 90 years old. He has owned a sole proprietorship, R.B. Potashnick, for over 60 years. That business is a heavy highway contractor. His net worth is estimated at $14.2 million. He maintains two residences in Cape Girardeau, one in which his granddaughter, Appellant Brinkopf, and her family live, and another apartment used primarily for storage. However, for health reasons, Potashnick has lived in Fort Lauderdale, Florida, since 1976. He has around-the-clock nursing care.

On August 13, 1991, R.B. Potashnick filed a voluntary petition for appointment of Larry Dunger as conservator of his estate. Potashnick hired Dunger in approximately 1950 and Dunger has been his chief financial advisor for the last 10 to 15 years. Dunger has also conducted most of Potashnick's business affairs since January of 1990 when Potashnick issued Dunger a durable power of attorney.

Upon Potashnick's filing, the Circuit Court of Cape Girardeau County appointed David B. Summers as guardian ad litem for Potashnick. Summers conferred with Potashnick and determined Potashnick understood what he was doing and he wanted Dunger as his conservator. That same day, the court held a hearing on the petition. The court did not provide notice of the proceedings to Potashnick's family.

The court then appointed Dunger as conservator after making the following findings: (1) Potashnick was disabled; (2) Potashnick wished Dunger to be appointed; (3) Potashnick had the capacity to understand the need for a conservator and had the ability to make a reasonable choice; and (4) Dunger was a suitable, qualified person to be conservator and he accepted such appointment. Dunger posted a surety bond in the amount of $13.2 million, equal to the amount of personal property in Potashnick's estate.

On August 15, 1991, a Florida court appointed Appellant Brinkopf temporary emergency guardian of Potashnick, which included the power to defend all actions brought against him or his property and to take possession of that property. The order was for 60 days. On August 23, 1991, Appellant Brinkopf filed a motion to intervene and a motion to set aside letters. The trial court held a hearing on the motions on September 6, 1991, and denied the motions. On September 20, 1991, Appellant Harrison, Potashnick's daughter, filed a motion to set aside letters on the basis of denial of due process. The trial court denied this motion as well. Appellants appealed separately. These appeals were consolidated. Appellants raise four issues on appeal: (1) whether the trial court erred in finding Potashnick disabled; (2) whether § 475.062 violates their due process rights; (3) whether they are entitled to intervention as a matter of right; and (4) whether venue was proper in Cape Girardeau County.

I.

Appellants' first point is the trial court erred in finding Potashnick disabled because the record does not support such a finding. Further, Appellants allege that if Potashnick were disabled, then he could have neither the capacity to understand the need for appointment of conservator nor make a reasonable choice. We reject these contentions.

Our review of the trial court's holding is limited. We will not overturn the judgment of a trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

When a voluntary petition for conservatorship is filed, the provisions of § 475.-062.1 are to be followed. Section 475.062.1 provides the court may appoint the chosen conservator in a voluntary petition if the court follows certain procedures. First, the court must appoint counsel for the person. Second, the court must be satisfied: (1) the alleged disability exists; (2) the disabled person wishes the appointment and has the capacity to understand the need for it; (3) the disabled person makes a reasonable choice of conservator; and (4) the person nominated as conservator is suitable, qualified and will accept the appointment. § 475.062.1, RSMo 1986. The court may appoint the conservator without notice or a hearing, except for notice to any codepositors or cotenants. § 475.062.1.

■ The record below clearly supports the trial court's finding that all the requirements of § 475.062 were met. First, the evidence showed Potashnick was disabled. "Disabled" is defined as one who is "[u]nable by any reason of physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that the person lacks ability to manage his financial resources." § 475.-010(4)(a), RSMo 1986. "Manage financial resources" means the inability to take "those actions necessary to obtain, administer, and dispose of real and personal property, intangible property, business property, benefits, income or any assets, or those actions necessary to prevent waste, loss or dissipation of property...." § 475.010(10), RSMo 1986. Potashnick testified he wished to appoint a conservator because his memory was failing and he needed help with his business. An affidavit by J.P. Downey, M.D., was admitted into evidence which stated Potashnick was disabled to the extent he lacked the ability to manage his financial resources. Dunger also testified about Potashnick's failing memory.

Furthermore, the court also interviewed Potashnick and satisfied itself he was disabled.

■ Appellants contend the appropriate standard to determine Potashnick's disability was clear and convincing evidence as set forth in § 475.075.7, and this standard was not satisfied. However, Appellants are relying on an inappropriate standard. Section 475.075 sets forth a person's due process rights when they have not consented to a petition for conservatorship. § 475.-062.2, RSMo 1986; § 475.075.1, RSMo 1986. More exacting procedures and standards are in order when a person opposes the appointment of a conservator of his estate than when one consents to the appointment and in fact chooses his own conservator. This is clearly recognized by the provisions of § 475.062 and § 475.075. By filing a voluntary petition and waiving due process rights, the procedures as to hearing and adjudication of disability set forth in § 475.075, including the standard of clear and convincing evidence, are no longer needed. Appellants have failed to cite one case where the clear and convincing evidence standard was applied in a voluntary petition. In fact, the provision of § 475.075.7 is seen as a codification of a case concerning an *involuntary* petition, *In the Matter of Armstrong*, 573 S.W.2d 141 (Mo.App.1978). *See,* Borron, The Guardianship Code Revision: An Overview, 39 J. of Mo. Bar 453, 456 (1983).

■ Also, Potashnick clearly expressed his desire Dunger be appointed conservator of his estate and Potashnick understood the need for a conservator. At the hearing on his voluntary petition, Potashnick was questioned extensively. During the hearing, Potashnick stated he wished Dunger to be conservator of his estate. Furthermore, Potashnick stated unequivocally he did not wish any of his family members appointed conservator. He further stated no one had forced him to sign the petition or coerced him in any way; he signed of his own free will.

In addition, there was substantial evidence to support the trial court's finding Potashnick made a reasonable choice and

Dunger was suitable and qualified for the position. Dunger has worked with Potashnick for the past thirty years and is the one person most intimately familiar with all aspects of Potashnick's business and financial affairs. For the last 22 years, Dunger has been comptroller for Potashnick. For the last 10 to 15 years, Dunger has been Potashnick's chief financial advisor and has basically been running the company in Potashnick's absence. Dunger has worked extensively with vast numbers of Potashnick's business associates, all of whom are used to dealing with Dunger. Moreover, Potashnick executed a durable power of attorney in favor of Dunger in January of 1990, giving Dunger authority to represent him in business matters. Dunger also indicated his willingness to accept the appointment to be conservator and his ability to procure a surety bond.

■ Furthermore, it is not inconsistent Potashnick was disabled and yet still able to realize he needed a conservator and make a reasonable choice. In *In the Matter of Weissinger*, 720 S.W.2d 430 (Mo.App. 1986), the trial court adjudged a man disabled, but refused to appoint his chosen conservator. This court held the trial court should have appointed his chosen conservator. We stated the 1983 amendment to the Probate Code–Guardianship "leaves selection of a guardian or conservator to the ward whenever possible," and "when an incapacitated or disabled person is, at the time of the hearing, able to communicate a reasonable choice, his nominee should be appointed if the nominee is willing to serve, is qualified under § 475.055, and is not unsuitable." *Id.* at 434[4]. *See also, In the Matter of Crist*, 732 S.W.2d 587, 590[3] (Mo.App.1987). Clearly, the guardianship provisions of the Probate Code contemplate that one who is disabled is not necessarily incompetent and unable to say whom he or she wishes appointed. If not possible, no one would ever be able to file a voluntary petition for appointment of a conservator and would be at the mercy and whim of various friends and family members. Potashnick had an absolute right to file a voluntary petition and to have his chosen conservator appointed so long as he was able to meet the requirements of § 475.062. Appellants' first point is denied.

## II.

Appellants' second point is the trial court erred in denying Appellants' motions to set aside letters of conservatorship because § 475.062 violates the Due Process Clause of the United States Constitution and the Missouri Constitution. They proffer the absence of a requirement of notice to family members violates their Due Process rights.

■ We must first address the issue of whether this court has jurisdiction to hear this case. Article V, § 3 of the Missouri Constitution provides the Missouri Supreme Court has exclusive jurisdiction of all cases involving the validity of a statute. If any point on appeal involves such question, the entire case must be transferred to the Supreme Court. *State ex rel. Union Electric v. Public Service Commission*, 687 S.W.2d 162, 165[3] (Mo. banc 1985). However, if the claim is merely colorable, as opposed to substantial, then jurisdiction remains in the Court of Appeals. *Magenheim v. Board of Education*, 340 S.W.2d 619, 621[1] (Mo.1960); *Duncan v. Missouri Board for Architects*, 744 S.W.2d 524, 531[6] (Mo.App.1988). A claim is:

> substantial when, upon preliminary inquiry, the contention discloses a contested matter of right, involving some fair doubt and reasonable room for controversy; but, if such preliminary inquiry discloses the contention is so obviously unsubstantial and insufficient, either in fact or law, as to be plainly without merit and a mere pretense, the claim may be deemed merely colorable.

*Kansas City Star Co. v. Shields*, 771 S.W.2d 101, 103[1] (Mo.App.1989) citing *State v. Egan*, 272 S.W.2d 719, 725 (Mo. App.1954).

■ Section 475.062.1 provides if a person has filed a voluntary petition for appointment of a conservator, and certain requirements are met, then the court can appoint a conservator without notice or hearing. § 475.062.1, RSMo Supp.1991. However, if an involuntary petition is filed,

§ 475.075 requires the court to give notice to the spouse, parents and adult children, among others. § 475.075, RSMo Supp. 1991.

The Fourteenth Amendment to the United States Constitution and Article I, § 10 of the Missouri Constitution provide no state shall deprive any person of life, liberty or property without due process of law. Due process of law requires notice and an opportunity to be heard. *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The notice required is that necessary "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949). Clearly, "interested parties" are those whose life, liberty or property interests are affected.

Appellants assert they are interested parties and had a right to notice of the hearing. Appellants contend they have a prospective interest in the estate as potential heirs or devisees and they have a "familial" interest in Potashnick. However, their potential interest in the estate is not enough to become a property interest protected by Due Process of Law, because "no one is an heir to the living." *Jacobsmeyer v. Cordes*, 700 S.W.2d 488, 490[1] (Mo.App. 1985). Furthermore, any familial interest which the Appellants may have in Potashnick is not enough to require Due Process of Law. In *Jacobsmeyer*, this court stated a daughter's familial interest in her father was not a property interest. *Jacobsmeyer*, 700 S.W.2d at 490. Further, this court in *Brown v. Storz*, 710 S.W.2d 402, 406[3] (Mo.App.1986), stated even in an involuntary petition for appointment of a conservator the trial court was not required to give family members notice it may appoint someone other than a family member as conservator.

The asserted interests are clearly not property interests. Further, the record shows Potashnick owned all of his assets solely in his own name. Appellants' names were not on any of the assets, nor do they claim they had any direct property interest in Potashnick's estate. Based on the foregoing, we are unable to conclude the Appel-lants presented a substantial Constitutional claim. It is plainly without merit and leaves little room for doubt or controversy. Therefore, we find we have jurisdiction. Furthermore, we hold § 475.062 does not violate Appellants' Due Process Rights.

### III.

Appellant Brinkopf also asserts the trial court erred in denying her motion to intervene because as the granddaughter and temporary emergency guardian of Potashnick she was entitled to intervention as of right per Rule 52.12(a).

Rule 52.12(a) provides a party must be permitted to intervene if "[u]pon timely application ... the applicant claims an interest relating to the property or transaction which is the subject of the action and he [or she] is so situated that the disposition of the action may as a practical matter impair or impede his [or her] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Rule 52.12(a). Thus, a party seeking intervention as of right must show three elements: (1) an interest relating to the property or transaction which is the subject of the action; (2) his or her ability to protect that interest is impaired; and (3) the existing parties are inadequately representing his or her interest. Rule 52.12(a); *State ex rel. Mercantile Bank v. Pinnell*, 804 S.W.2d 63, 65[1] (Mo.App. 1991). An interest does not include a mere, consequential, remote or conjectural possibility of being affected as a result of the action, but must be a direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment. *State ex rel. Farmers Mutual Automobile Insurance Co. v. Weber*, 364 Mo. 1159, 273 S.W.2d 318, 321[4] (1954); *Bunting v. McDonnell Aircraft Corp.*, 522 S.W.2d 161, 169[13] (Mo. banc 1975). The burden of proof in an intervention action lies with the proposed intervenor. *Alsbach v. Bader*, 616 S.W.2d 147, 151[4] (Mo.App. 1981). A motion to intervene may be denied if even one of the elements is not met. *Pinnell*, 804 S.W.2d at 65[2].

■ Appellant Brinkopf first asserts her interest as Potashnick's granddaughter is enough to require intervention as of right. However, the subject matter of the conservatorship is Potashnick's property, not Potashnick. A pure familial interest in Potashnick is not a sufficient interest in the subject matter of the action. Further, as stated above, any potential interest which she may or may not have in inheritance is not a property interest. *Jacobsmeyer*, 700 S.W.2d at 490[1]. This is not a direct claim upon the subject matter of the action. It is merely conjectural and therefore is not protectable.

■ Appellant Brinkopf also claims an interest in Potashnick's property pursuant to the Florida court's order of August 15, 1991, appointing Brinkopf temporary emergency guardian over Potashnick and his property for 60 days. This Florida order was not granted until the day after the Missouri court appointed a conservator. Appellant Brinkopf had no interest at the time the trial court entered the judgment. Further, the purpose of mandatory intervention is to avoid multiplicity of actions. *State ex rel. Power Process Piping, Inc. v. Dalton*, 681 S.W.2d 514, 518[5] (Mo.App. 1984). In this case, intervention after judgment has been entered would not promote this purpose. Appellant Brinkopf is not entitled to intervene as a matter of right under Rule 52.12(a).

In addition, Appellant Brinkopf is unable to show that any interest she may have is impaired by the disposition of the conservatorship proceeding. Any alleged interest Appellant may have in Potashnick's property as a potential heir or devisee or temporary guardian is protected by the bond posted by Dunger for $13.2 million.

Point denied.

### IV.

Appellants' final point is the trial court erred in entering its order granting Dunger conservatorship because the court lacked jurisdiction. They allege Potashnick is not a domiciliary of Missouri and therefore venue was improper in Cape Girardeau County.

Section 475.035 provides venue for appointment of a conservator lies in the following: (1) the county of domicile; or (2) if no domicile is in Missouri, then in any county wherein the respondent resides, or if no county of residence, then in any county in which he has property; or (3) in any county where he or his property is found. The trial court found Potashnick was domiciled in Missouri and therefore exercised jurisdiction pursuant to § 475.035.1(1). Appellants now contend this was erroneous because they allege Potashnick was domiciled in Florida. We deny Appellants' contention.

■ "Domicile" is that place where a person has his true, fixed and permanent home and principal establishment to which, whenever he is absent, he has the intention of returning. *Fowler v. Clayton School District*, 528 S.W.2d 955, 957[2] (Mo.App. 1975). Clearly, Potashnick's original domicile was Cape Girardeau County, Missouri. He was born in Missouri. He lived in Cape Girardeau County, Missouri, and conducted his business there for over 60 years. However, Appellants contend that Potashnick changed his domicile to Florida. To change domicile, there must be presence in a new domicile and present intent to remain there indefinitely and make that location one's permanent residence. *Gaffney v. Gaffney*, 528 S.W.2d 738, 741[4] (Mo. banc 1975); *Bridges v. Bridges*, 559 S.W.2d 753, 755[5] (Mo.App.1977). Intention must be considered along with physical acts performed in conformity with this intent. *Fowler*, 528 S.W.2d at 957[3]. A court may also look to declarations made by the person as to intent. *Toler v. Workman*, 325 S.W.2d 755, 760[8] (Mo.Div. 2 1959).

■ Potashnick has not changed his domicile to Florida. He stated in the hearing for appointment of conservator he intended to remain a Missouri resident even though he stayed in Florida most of the time. He also signed an affidavit declaring that intent. Certainly his physical acts are also in conformity with that intent. He is a registered voter in Cape Girardeau County, Missouri. He maintains his banking accounts there and has engaged in business

there for over 60 years. He still files Missouri tax returns. He has a Missouri driver's license. He owns a home and other property located in Cape Girardeau County. Until 1988 when his health worsened, Potashnick traveled back and forth between Missouri and Florida. Without the present intent for Potashnick to change his domicile, Cape Girardeau County, Missouri, remains his domicile.

In any event, even if Potashnick were a domiciliary of Florida, the trial court had venue pursuant to § 475.035.1(2) or (3). Potashnick owned a house in Cape Girardeau County. He also owned a business and business property in Cape Girardeau County. Therefore, venue was proper in Cape Girardeau County and the trial court had jurisdiction to hear the conservatorship proceedings. Point denied.

Judgment affirmed.

KAROHL, C.J., and AHRENS, J., concur.